MATT JESSOP, Appellant, v. STATE INDUSTRIAL INSURANCE SYSTEM, an Agency of the State of Nevada, Respondent.

No. 21768

December 12, 1991                    822 P.2d 116

*King, Clark, Gross & Sutcliffe,* Las Vegas, for Appellant.

*R. Scott Young,* General Counsel, Carson City; *William A. Zeigler,* Associate General Counsel, Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This appeal challenges the method by which an appeals officer from the State Industrial Insurance System (SIIS) determined Matt Jessop's average monthly wage for the purpose of calculating his industrial insurance benefits.

Matt Jessop incurred a compensable injury to his back on

March 24, 1989, during the first week of his employment as a carpenter for Dillon Enterprises. On September 7, 1989, an administrative hearing was held to determine Jessop's benefit level. At the hearing, a C-3 form submitted by Jessop's employer on April 5, 1989, was presented, indicating that Jessop was hired to work seven days per week, from 6:00 a.m. to 4:00 p.m., for twelve dollars an hour, and that Jessop did not receive piecework. However, Jessop's employer submitted a conflicting BCS-8 form, dated April 27, 1989, which stated that Jessop was hired to do piecework and that his hours of employment varied. As a result of this conflicting evidence, the hearing officer directed SIIS to conduct an audit for the purpose of accurately determining Jessop's average monthly wage.

SIIS investigated Jessop's income by examining his payroll history at the time of the accident and the employment histories of three co-employees who were hired to do piecework.[1] Two of the three co-employees used for comparison had worked a total of two weeks and were employed subsequent to the date of Jessop's injury. The third co-employee was employed for a five week period extending from the four weeks preceding Jessop's injury to the week after. Based upon the payroll histories of Jessop's co-workers, SIIS determined that Jessop was hired as a piece-worker and calculated his average monthly wage to be $776.94. The administrative appeals officer accepted this calculation as the average monthly wage, relying upon NAC 616.678(6) for her conclusions of law.

Jessop appealed the decision of the appeals officer to the district court, claiming that the appeals officer did not properly interpret the statutes and regulations addressing the calculation of average monthly wage and that the evidence in the record was insufficient to support the conclusion. The district court affirmed, finding substantial evidence to support the administrative appeals officer's decision. Jessop appealed to this court, and we reverse.

To overturn the administrative appeals officer's decision, this court may find either that the decision was not supported by substantial evidence or that it was based upon an incorrect conclusion of law. *See, e.g.,* Kraft v. Nev. Emp. Sec. Dep't, 102 Nev. 191, 194, 717 P.2d 583, 584 (1986); Nyberg v. Nev. Indus. Comm'n, 100 Nev. 322, 324, 683 P.2d 3, 4 (1984).

The determination of the appeals officer in this case was based upon NAC 616.678(6), which provides:

---

[1]Jessop continued to work for six consecutive weeks following his injury.

> If earnings are based on piecework and a history of earnings is unavailable for a period of at least 4 weeks, the wage must be determined as being equal to the average earnings of other employees doing the same work.

Because Jessop had only worked at his job for one week prior to his injury, and because the results of the SIIS audit showed Jessop to be a pieceworker, the appeals officer calculated Jessop's monthly wage based upon that of his co-workers.

We conclude that application of subsection (6) of NAC 616.678 was unreasonable in the instant case. The general rule for calculating an employee's average monthly wage for the purpose of determining insurance benefits is that earnings are to be calculated based on a history of that employee's earnings for a twelve week period. *See* NAC 616.678(1). NAC 616.678(8) states that the earnings history should be the twelve weeks prior to injury. Where such a history is unavailable, other subsections of NAC 616.678 provide additional guidelines appropriate to various situations. For example, NAC 616.678(6) provides the general rule applicable to pieceworkers. However, these guidelines are not absolute. NAC 616.678(7) provides alternate rules to be applied when the methods described by the other subsections "cannot be applied reasonably and fairly."[2] This is the situation with which we are now presented.

NAC 616.678(6) was the appropriate section to refer to first because the hearing officer determined that Jessop was a pieceworker. The four weeks earning history to which section (6) refers is an earnings history prior to the injury. This comports with the general approach of SIIS and the statutory scheme used to determine a person's earnings by examining the time period before injury. Since Jessop does not have a four week earnings record before the injury, we are directed by section (6) to determine the claimant's monthly wage by the average earnings of the other *employees* doing the same work. Again, these earnings should predate the injury. Since two of the three workers used to determine Jessop's wage were only employed subsequent to his injury, we do not have a history of employees' earnings prior to the injury. Consequently, it is inappropriate to use section (6) in

---

[2]NAC 616.678(7) states in full:

> If these methods of determining a period of earnings cannot be applied reasonably and fairly, an average monthly wage will be calculated by the insurer at 100 percent of:
>
> (a) The sum which reasonably represents the average monthly wage of the employee as defined in NAC 616.670 to 616.688, inclusive, at the time his injury or illness occurs; or
>
> (b) The hourly wage on the day the injury or illness occurs, calculated by using the projected working schedule.

this case, and resort should be made to section (7). Therefore, we reverse with instructions to remand the matter to SIIS for a redetermination of average earnings.

MOWBRAY, C. J., ROSE and STEFFEN, JJ., and LEHMAN, D. J.,[3] concur.

YOUNG, J., dissenting:

Respectfully, I dissent. I would remand for a redetermination under NAC 616.678(6).

The majority concedes that NAC 616.678(6) was the appropriate section to consult in calculating Jessop's earning history. The majority states that because Jessop did not have a four-week earning history prior to the injury, it was appropriate for the appeals officer to calculate Jessop's wage based on the earnings of other employees performing the same work. However, the majority holds that it was error for the appeals officer to use earning figures from co-employees which did not predate Jessop's injury. The majority at this point takes an illogical turn in its analysis. Instead of remanding the case for a recalculation of Jessop's earnings using co-workers' wage information which predated Jessop's injury, the majority advocates ignoring the section altogether and applying subsection (7) stating that ''the application of subsection (6) of NAC 616.678 was unreasonable in the instant case.'' I do not see how using post-injury earning data from Jessop's co-workers renders the application of subsection (6) unreasonable or unfair. Additionally, I do not see the logic in failing to remand the case for recalculation based on subsection (6) using pre-injury data of Jessop's co-workers.

I also disagree with the majority's instruction that the appeals officer should use subsection (7) in recalculating Jessop's wage. Subsection (7)(a) refers the appeals officer to NAC 616.670 through 616.688. The only provision within those sections which applies to Jessop as a pieceworker with less than four weeks work history is NAC 616.678(6). The majority states that subsection (6) is unreasonably applied in this case and directs the appeals officer not to use the section. Subsection (7)(b) instructs the appeals officer to calculate Jessop's average monthly wage using the hourly wage on the date of injury. Jessop is a pieceworker whose wage cannot be reduced to an hourly figure. Therefore, subsection (7)(b) is inapplicable to this case. I am not sure on what the majority would have the appeals officer base the calculation, if the officer cannot use either subsection (6) for piecework-

---

[3]The Honorable Jack Lehman, Judge of the Eighth Judicial District Court, was designated by the Governor to sit in place of THE HONORABLE CHARLES E. SPRINGER, Justice. Nev. Const. art. VI, § 4.

ers or subsection (7)(b) because Jessop's earnings cannot be reduced to an hourly wage.

Without expressly stating so, the majority impliedly would have the appeals officer calculate Jessop's average wage using Jessop's post-injury earnings. NAC 616.678(8) provides: "The period used to calculate the average monthly wage *must* consist of consecutive days, *ending on the date on which the accident or disease occurred,* or the last day of the payroll period *preceding* the accident or disease if this period is representative of the average monthly wage." (Emphasis added.) The majority apparently advocates using employment "history" which occurs after the injury to determine the average monthly wage. The majority's view of history flies in the face of the express directive of NAC 616.678(8).

Public policy dictates that it is unwise to allow history to occur after the injury. The majority's interpretation of a worker's earning history is subject to manipulation which could unjustly increase benefits. The employer can easily hire the worker back, after an injury, at an inflated wage in order to boost the calculation of the worker's average wage. An employer is not necessarily disadvantaged by inflating the worker's wages upon rehiring. There is no disadvantage to employers whose businesses are closing or employers who are about to declare bankruptcy because they will no longer be paying into SIIS. Likewise, employers who are already paying the statutory maximum premium (or close to it) will not be harmed by hiring the injured worker back at a higher wage because they will not be required to pay more for the insurance coverage.

The majority construes NAC 616.678 contrary to its clear meaning. Where the language of a worker's compensation statute is clear and unambiguous, this court is not empowered to go beyond the face of the statute and lend it a construction contrary to its clear meaning. Spencer v. Harrah's Inc., 98 Nev. 99, 101-102, 641 P.2d 481, 482 (1982). It is not within this court's province to question the wisdom of the statute, even where the court is sympathetic to a worker's claim. *Id.*

Further, during oral argument, SIIS informed this court that its practice is to determine a worker's average monthly wage using earnings up to the date of the injury. The construction placed on a statute by the agency charged with the duty of administering it is entitled to deference. Jones v. Rosner, 102 Nev. 215, 217, 719 P.2d 805, 806 (1986).

The majority's method of calculation will result in an undue administrative burden to SIIS because a worker's duties and pay often change once the worker returns to work after an injury. Unfair and unreasonable results may occur as well. Workers may

be disadvantaged if their pay decreases upon returning to work, especially for pieceworkers who may not be able to produce at their pre-injury level.

The period used to calculate the average monthly wage ends on the date of the injury. NAC 616.678(8). If a history of earnings for a pieceworker is unavailable for at least four weeks, the appeals officer must calculate the average monthly wage based on the earnings of other employees doing the same work. NAC 616.678(6). The majority's method of calculating the average monthly wage is contrary to the regulations, is open to manipulation, and may result in unfair and unreasonable results. I therefore dissent.